UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff in Error,

v.

Louie WALKER, Father and next of kin of Broyce Walker, Deceased, Defendant in Error.

No. 37710.

Supreme Court of Oklahoma.

June 10, 1958.

Rehearing Denied Sept. 16, 1958.

Monnet, Hayes & Bullis, Oklahoma City, for plaintiff in error.

Norman & Wheeler, Edwin Langley, Muskogee, Amos T. Hall, Tulsa, for defendant in error.

DAVISON, Justice.

This is an appeal from a judgment in favor of the plaintiff, Louie Walker, father and next of kin of Broyce Walker, deceased, against the garnishee, United States Fidelity and Guaranty Company, upon a trial of issues formed by the answers of garnishee to interrogatories and exceptions of plaintiff thereto. The primary defendant was one Ralph Taylor and all of the parties will be herein referred to as they appeared in the trial court.

On the morning of December 27, 1953, the defendant was driving a two ton truck on a highway near Taft, Oklahoma. Attached to the truck was a four wheel trailer with a 500 gallon tank, half full of buttermilk, mounted thereon. A collision occurred between the trailer and a car occupied by plaintiff's decedent and one Talmadge Maxwell. As a result of the collision plaintiff's decedent was killed and said Maxwell was seriously injured. Plaintiff filed this action and recovered judgment against the defendant. After execution was issued and returned nulla bona, the garnishee was served with interrogatories upon the ground that it had issued its automobile liability policy of insurance to the defendant and was liable thereunder for the amount of plaintiff's judgment. Garnishee denied liability and plaintiff took issue with garnishee's answer. Trial of those issues resulted in judgment for plaintiff from which this appeal has been perfected.

Garnishee, in denying liability, relies upon the provision in the policy to the effect that,

"This policy does not apply:

"(c) under Coverages A and B, while the automobile is used for the towing of any trailer owned or hired by the Insured and not covered by like insurance in the Company;"

In the present case the trailer was not covered by like insurance in the defendant company.

Plaintiff counters with the assertion that said defense is not available, being prohibited by the terms of the Motor Vehicle Financial Responsibility Act which was made applicable by the following policy provision, to wit:

"Such insurance as is afforded by this policy for bodily injury liability or property damage liability shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy. The Insured agrees to reimburse the Company for any payment made by the Company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph."

■ We have not, heretofore, been called upon to determine the question presented. The rights of the parties spring entirely from the contractual relationship as established and limited by the policy provisions. An analysis of the last above quoted excerpt therefrom makes it apparent that the parties intended the insurance to comply with the financial responsibility law only "to the extent of the coverage and limits of liability required by such law." Because the defendant had not theretofore had a wreck nor was his liability insurance required by said law generally, the financial responsibility law was applicable only to the extent and in the manner provided by the policy.

■ The financial responsibility law of this state is therein designated as the

Safety Responsibility Act and is identified as 47 O.S.1951 consisting of sections 501 to 542 inc. By sec. 505, it is provided that, after a motor vehicle accident, the license of the operator and the registration of the vehicle shall be suspended unless proper security for the payment of the resulting damages is deposited with the commissioner. However, said section has no application in cases where the involved motor vehicle or the operator was covered by an automobile liability policy. By sec. 507, it is provided that the said suspension of license and registration is not to be terminated until a deposit of security or a meeting of other requirements is had by said operator. Sections 513 and 514 make similar provisions where the Commissioner is furnished a certified copy of judgment rendered against an operator. Section 517 provides for similar suspensions in cases where the operator has been convicted or has forfeited bail.

An additional requirement for terminating the suspension (for whatever cause) is that proof of financial responsibility of the operator be furnished. This proof may be made by the filing of a certificate of insurance, a bond, a deposit of money or securities or a certificate of self insurance. As to the insurance certificate, the insurance carrier shall certify that a "motor vehicle liability policy" is in effect. Secs. 519 and 520. Section 521 defines "motor vehicle liability policy" and sets out the requirements of such a policy.

From a careful analysis of the act, it is apparent that the lawmaking body contemplated two types of insurance policy for the two classes of operators. One is an "automobile liability policy" voluntarily carried and which exempts the operator from the penalties or requirements of section 505. The other is a "motor vehicle liability policy" which an operator is compelled to carry in order to terminate the suspension of his license (under provisions of 505, 513 or 517).

A certificate of the existence of the latter type policy must be filed to constitute "proof of financial responsibility" and liability thereunder is absolute with the occurrence of the injury or damage.

The principal defendant in the case at bar had never had his license suspended nor was he compelled to carry the insurance nor was a certificate of the existence of said insurance ever filed or required to be filed. The policy evidenced insurance voluntarily carried by defendant for his own protection. The liability of the garnishee hinges upon what was meant by the parties by providing that "such insurance * * * shall comply with the provisions of the motor vehicle financial responsibility law * * * to the extent * * * required by such law." (Supra.)

In much the same type of case arising under the California Act, West's Ann. Vehicle Code, § 410 et seq., the U. S. Circuit Court of Appeals held, in the case of State Compensation Insurance Fund v. Bankers Indemnity Ins. Co., 9 Cir., 106 F.2d 368, that,

"An endorsement of amendment of automobile liability insurance policy to conform with requirements of State Financial Responsibility Act to extent of coverage and limits of liability required thereby did not extend, modify or enlarge insurer's obligations under policy, where insured was not guilty of any act or omission requiring his compliance with such act before policy was issued."

In the case of New Zealand Insurance Co. v. Holloway, D.C., 123 F.Supp. 642 (Louisiana) the distinction between an "automobile liability policy" and a "motor vehicle liability policy" as defined by the statute dealing with "proof of future financial responsibility" is recognized.

The case of McCarthy v. Insurance Co. of Texas, Tex.Civ.App., 271 S.W.2d 836, 837, discussed at length the Texas statute defining "motor vehicle liability policy" (almost identical to the Oklahoma

statutory definition) and, in holding that the policy involved was not within the definition, also said,

"The sum of the above analysis is that absolute coverage results when a certificate has been furnished. In this case none was ever furnished by the insurer, nor required by the act in advance of the first accident. The insurer is entitled to plead its policy defenses."

The factual situation in the case of Hoosier Casualty Co. of Indianapolis, Ind. v. Fox, D.C., 102 F.Supp. 214, 232, (Iowa), was for all practical purposes, the same as in the instant case. There, paragraph "E" of the policy was the same as the policy paragraph herein, above quoted which made the insurance comply with the motor vehicle financial responsibility law to the extent required. With reference thereto the Court said,

"Nor does Paragraph E on page 3 of the policy, quoted supra, transform the policy into a 'proof' policy, which the insurer cannot avoid. It merely says that the policy shall comply with the provisions of the Act; and Sec. 321A.21(6) of the Act does not purport to take away policy defenses as to any policies other than those certified as proof of future financial responsibility. Paragraph E does contemplate that the policy *can* by used as a 'proof policy' *if certified* as such, for it gives the insurance company a right of indemnity against the insured for any payment made by the company which would not have been made except for the agreement contained in the paragraph."

Contrary to the cited and quoted cases above is the case of Farmer's Ins. Exchange v. Ledesma, 10 Cir., 214 F.2d 495, (New Mexico). The opinion therein is very generalized and does not discuss the specific provisions, of the statutes nor of the policy, which constitute the gist of all other reported cases on the subject. It furnishes no answer to the questions or the propositions here involved. We, therefore, prefer to follow the sound logic and reasoning followed by the great weight of authority.

The policy constituting the gist of the present action provided that it should comply with the financial responsibility law as required by said law. The defendant carried it voluntarily. He had never been required to furnish proof of financial responsibility. It had not been certified as such proof under section 519 or 520. It, thus, does not come within the definition of a "motor vehicle liability policy" as contained in section 521 and, for that reason, is not subject to the absolute liability provisions of said statute. Because the defendant was pulling a trailer at the time of the accident, in violation of the policy exclusion provision, the garnishee was not liable.

There is another reason supporting the conclusion here reached as to the effect of the policy provision concerning the financial responsibility law. Any other conclusion would nullify the exclusion provision. We need not discuss it at length but a cardinal rule of interpretation of contracts followed by this court, is that such construction must be placed thereon, if possible, as to give meaning to every provision contained in the contract. Our conclusion is in harmony with that rule where, to hold otherwise, would not be.

The judgment is reversed and the garnishee discharged.

WELCH, C. J., and HALLEY, JOHNSON, WILLIAMS, JACKSON and CARLILE, JJ., concur.

CORN, V. C. J., and BLACKBIRD, J., dissent.